UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DONNA RINKER, )
)
    *Plaintiff*, )
)
)
v. ) No. 1:16-cv-376-SKL
)
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    *Defendant*. )

## MEMORANDUM AND ORDER

Plaintiff Donna Rinker ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Docs. 17 & 21] with supporting briefs [Docs. 18 & 22]. This matter is now ripe. For the reasons stated below, Plaintiff's motion for judgment on the administrative record [Doc. 17] shall be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 21] shall be **DENIED**; and (3) the decision of the Commissioner shall be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB on July 10, 2013, alleging disability beginning March 6, 2013 [Doc. 10 ("Tr.") 20, 138]. Plaintiff's claim was denied initially and upon reconsideration at the agency level (Tr. 20, 65, 78). The administrative law judge ("ALJ") held a hearing on July 1, 2015, during which Plaintiff was represented by a non-attorney representative/social security consultant (Tr. 14, 38-53). The ALJ found on August 14, 2015, that Plaintiff was not under a disability as defined in the Social Security Act ("Act") (Tr. 20-33). On July 16, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action.

II.    FACTUAL BACKGROUND

A.     Education and Employment Background

Plaintiff was born in 1963 (Tr. 31). She completed high school and is able to communicate in English (Tr. 31). Plaintiff's past relevant work history includes working as a long-time administrative assistant (Tr. 31).

B.     Medical Records

In her Disability Report, Plaintiff alleged disability due to bipolar disorder, depression, and anxiety (Tr. 195). The administrative record contains extensive medical records, but only the portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective sections of the analysis below. All relevant records have been reviewed.

C.     Hearing Testimony

The transcript of the testimony at the hearing has been carefully reviewed. Both Plaintiff and Rodney Caldwell, Ph.D., a vocational expert, testified (Tr. 38-53). While it is not necessary

to summarize the testimony herein, the testimony will be addressed as appropriate within the respective sections of the analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2018 (Tr. 22).  At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 6, 2013, the alleged disability onset date, through the date of the ALJ's decision (Tr. 22).  At step two, the ALJ found Plaintiff had the following severe impairments: anxiety disorder, depressive disorder, and cardiac disease (Tr. 22).  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work involving simple, routine, and repetitive tasks with no more than occasional interaction with coworkers and supervisors and no public interaction (Tr. 23-31).  At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 31).  At step five, after considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 as a framework for his decision and considering the testimony of the vocational expert, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, including assembler, hand packer, and production inspector (Tr. 32-33). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined by the Act at any time from the alleged disability onset date through the date of the ALJ's decision (Tr. 33).

## IV. ANALYSIS

Plaintiff argues the ALJ did not properly consider her obesity, did not explain his credibility finding, and failed to state good reasons for rejecting the opinion of her treating psychiatrist. The Commissioner argues the ALJ properly considered the evidence and substantial evidence supports the ALJ's findings.

### A. Standard of Review

A court must affirm unless the Commissioner's decision rests on an incorrect legal standard or is not supported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court, however, may not consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.     Obesity**

The parties agree that the ALJ did not mention "obesity" in his decision. Plaintiff argues the ALJ failed to properly consider or evaluate her obesity in accordance with Social Security Ruling ("SSR") 02-1p,[1] the SSA ruling addressing obesity. Acknowledging the ALJ did not explicitly address obesity, the Commissioner argues that he was not required to do so under the Sixth Circuit's interpretation of SSR 02-1p, that the ALJ implicitly considered Plaintiff's weight, that Plaintiff has not shown any limitations resulting from obesity which are not already included

---

[1] *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A. Sept. 12, 2002), 2002 WL 34686281 (hereinafter referred to as "SSR 02-1p").

in the ALJ's RFC finding limiting her to a reduced range of light work, and that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments.

There are three levels of obesity that correlate with Body Mass Index ("BMI") levels. Level I includes BMIs of 30.0-34.9, Level II includes BMIs of 35.0-39.9, and Level III, which includes BMIs equal to or greater than 40, is considered "'extreme' obesity and represent[s] the greatest risk for developing obesity-related impairments." SSR 02-1p, 2002 WL 34686281, at *2. The parties seemingly agree that the medical record contains evidence that would indicate Plaintiff's obesity, such as treatment notes recording Plaintiff's height of 5'3" and a weight ranging from 195 to 174 pounds, equating to BMI Level I scores ranging from around 34.5 to 30.8 (Tr. 364, 371, 377, 383, 390). Various treatment records also note that Plaintiff reported weight gains of ten to a total of thirty pounds after she lost her job, and she reported fatigue that worsened after her heart attack (Tr. 294, 377, 383, 390, 396).

As noted by the Commissioner, the medical records do not actually reference or diagnose "obesity"; instead, physical examinations note that Plaintiff was "overweight" (Tr. 365, 372, 378, 385, 391, 397). The medical records also do not discuss treatment for obesity, but do repeatedly address Plaintiff's need to stop smoking (Tr. 327, 332). While Plaintiff testified about her weight gain as a medication side effect and included the same in her disability reports, she did not specify problems due to obesity in her disability application or at the administrative hearing; instead she only reported that medications caused her weight gain [Doc. 22 at Page ID # 509 (citing Tr. 47, 195, 204, 218, 224, 238)]. When asked during the hearing if she had any physical problems, Plaintiff responded, "Well I had a heart attack in October but that doesn't actually give me physical problems. I have since healed from that. But the mental problems that I have, I have social anxiety so I have a very hard time being around people." (Tr. 43).

7

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

SSR 02-1p provides in pertinent part: "The combined effects of obesity with other impairments may be greater than might be expected without obesity." 2002 WL 34686281, at *6. As recently held by the Sixth Circuit,

> Obesity commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. . . . The ALJ . . . must specifically take into account the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment, and consider how fatigue may affect the individual's physical and mental ability to sustain work activity . . . .

*Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (internal citations and quotation marks omitted).

Plaintiff cites SSR 02-1p for the proposition that obesity is a genuine medical condition that must be considered in making a disability determination. Plaintiff also asserts SSR 02-1p requires an ALJ to explain how consideration of obesity impacted the ALJ's conclusion on disability. Pursuant to SSR 02-1p, an ALJ must consider the functional limitations resulting from a medically determinable impairment of obesity in the RFC assessment, in addition to

limitations resulting from any other physical or mental impairment. SSR 02-1p contains a lengthy explanation of how the Commissioner will treat obesity when applying the five-step process. For example, it notes

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

SSR 02-1p, 2002 WL 34686281, at *6. In addition, "[o]besity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea." *Id*. at 3.

As noted, the Commissioner appears to concede that (1) although not diagnosed, Plaintiff's weight/BMI score qualified as obese (non-severe) during the relevant period, and (2) that the ALJ did not explicitly discuss obesity in rendering his decision. The Commissioner argues obesity was not a focus of Plaintiff's claim for DIB and remand is not appropriate because the ALJ relied on the opinion of a psychological examiner who considered Plaintiff's obesity in making an assessment. To support this argument, the Commissioner cites to *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006), in which the Court of Appeals for the Sixth Circuit held SSR 02-1p

> does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase

> the severity of the other limitations. It is a mischaracterization to suggest that [SSR 02-1p] offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe*, 165 F. App'x at 411-12.

As argued by the Commissioner and acknowledged by Plaintiff, in some circumstances an ALJ fulfills his duty to consider obesity if he credits the report of an expert who considered obesity. *Id.* at 412. While Plaintiff argues neither the reviewing State Agency physicians nor the ALJ took Plaintiff's obesity into consideration whatsoever, the Commissioner points out that the ALJ gave great weight to the opinion of Benjamin Miller, a psychological examiner under the supervision of James Trevor Milliron, Ph.D., who "considered Plaintiff's obesity as he noted that Plaintiff was 5 feet 3 inches tall and reported weighing about 160 pounds (Tr. 257)." [Doc. 22 at Page ID # 508]. Although the examiner's note of Plaintiff's reported height and weight was no more than a fleeting comment in his general observations of Plaintiff's appearance (Tr. 257), the Commissioner argues that because the ALJ credited the psychological examiner's report, the ALJ implicitly considered Plaintiff's obesity under *Bledsoe*. The Court finds this bare observation by the psychological examiner falls woefully short of the applicable requirements for consideration of obesity addressed in SSR 02-1p, *Bledsoe*, and other Sixth Circuit precedent.

SSR 02-1p offers guidance on how obesity is to be assessed in conjunction with other impairments. *See Norman v. Astrue,* 694 F. Supp. 2d 738, 741-42 (N.D. Ohio 2010) ("this is more than a requirement that the ALJ mention the fact of obesity in passing"). In *Bledsoe*, the Sixth Circuit offered practical assistance in applying SSR 02-1p finding that the ALJ had properly considered the claimant's obesity by making "explicit mention of [the claimant's] obesity in his finding of facts" and by "credit[ing] an expert's report that considers obesity." *Bledsoe*, 165 F. App'x at 412; *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443

(6th Cir. 2010) (holding SSR 02-1p does not require a particular "mode of analysis," but only requires the ALJ, while analyzing the five steps, to evaluate obesity as one factor affecting the severity of the impairments). Both *Bledsoe* and *Coldiron* held that as long as the ALJ relies on opinions of physicians or consultative experts who took the claimant's obesity into account in rendering such opinions, there is no need for the ALJ to detail separately his or her own consideration. *Coldiron*, 391 F. App'x at 443; *Bledsoe*, 165 F. App'x. at 412.

First, it is a stretch too far to argue that the psychological examiner took into account Plaintiff's obesity in rendering his opinion because he noted her reported weight and height along with the color of her hair and eyes. Second, unlike in this case, the ALJs in both *Coldiron* and *Bledsoe* explicitly discussed the respective claimant's obesity in their findings of fact. *Coldiron*, 391 F. App'x at 443; *Bledsoe*, 165 F. App'x at 412. In contrast, here the ALJ did not mention Plaintiff's obesity in his discussion of the medical evidence, in his RFC determination, or anywhere else in his decision. This complete omission of any mention of Plaintiff's obesity in the ALJ's decision distinguishes Plaintiff's case from *Coldiron* and *Bledsoe*. *See also Barker v. Comm'r* of Soc. Sec., No. 1:15-CV-262-SKL, 2016 WL 3448583, at *5 (E.D. Tenn. June 17, 2016) (applying the same analysis and remanding the claim based on the ALJ's failure to consider or even mention obesity).

Also according to the Commissioner, the ALJ "reasonably did not discuss obesity because Plaintiff did not raise the issue" and because "Plaintiff reported no physical limitations whatsoever. Rather, Plaintiff testified that she had healed from her heart attack and she did not have any physical problems. Similarly, Plaintiff did not indicate that her weight gain adversely affected her mental abilities." [Doc. 22 at Page ID # 509-10]. Citing to a case from this Court, *Lyons v. Astrue*, No. 3:10-cv-502, 2012 WL 529587, *4 (E.D. Tenn. February 17, 2012), the

Commissioner argues remand is inappropriate because Plaintiff has not offered any evidence that a restriction resulting from her obesity required greater limitations than those found by the ALJ in his RFC determination.

Although the Commissioner seems to acknowledge evidence of Plaintiff's obesity, the Commissioner argues that BMI scores do not establish a medically determinable impairment of obesity as the BMI score is only one tool used by physicians to assess obesity, and it is not the only factor considered in making an obesity diagnosis. Citing to SSR 02-1p, the Commissioner further argues that when the evidence contains consistently high body weight or BMI scores in the obesity range but no diagnosis of obesity, the "ALJ may use his judgment based on the medical findings and other evidence in the case record." [Doc. 22 at Page ID # 509]. Perhaps this argument best illustrates the point: this Court cannot determine whether the ALJ actually used his judgment and considered obesity-related issues. In *Lyons*, this Court noted "that the ALJ discussed parts of the record which contain[ed] findings regarding [the claimant's] obesity and the recommendation that she lose weight" and from this discussion the Court was able to conclude "that the ALJ properly assessed the impact of [the claimant's] obese condition on other systems through his assessment of her limitations." 2012 WL 529587, at *4. In contrast here, the Court is unable to determine whether the ALJ properly assessed the impact of Plaintiff's obesity at all, let alone at each of the five stages of the sequential evaluation process.

True, Plaintiff did little to meet her burden of marshaling competent medical opinions and evidence to show specifically how her obesity exacerbated her other impairments or interacted with them. Perhaps the ALJ would have reached the same result with a proper consideration of obesity. However, there is absolutely nothing of record to indicate the ALJ actually considered Plaintiff's obesity in combination with her other impairments at all stages of

the sequential evaluation, as required by the plain language of SSR 02-1p. This omission by the ALJ renders it impossible to tell if he properly considered Plaintiff's obesity during the relevant period. SSR 02-1p requires an ALJ to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations," 2002 WL 34686281, at *7, but the ALJ failed to do so in this case.

While there is no medical opinion of record that Plaintiff is significantly limited because of her obesity, the complete exclusion of any mention of Plaintiff's obesity makes it impossible for the Court to tell if the ALJ actually considered this condition in formulating the RFC. Given the complete omission of any mention of Plaintiff's obesity (or how Plaintiff's impairments may have been compounded by her obesity) in the ALJ's decision, the Court finds the ALJ erred by failing to consider the impact of this condition as required by SSR 02-1p. *See Shilo*, 600 F. App'x. at 959 ("Obesity . . . must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'") (quoting SSR 02-1p, 2002 WL 34686281, at *1); *Barker*, 2016 WL 3448583, at *5 (holding that "[T]he ALJ did not mention Plaintiff's obesity in his discussion of the medical evidence, in his RFC determination, or anywhere else in his decision. . . . . This omission by the ALJ renders it impossible to tell if he properly considered Plaintiff's obesity.").

In *Shilo*, a recent case neither party mentioned, the Sixth Circuit noted that while obesity is no longer considered a "listed impairment," its effect on the claimant's ability to work must be specifically considered. *Shilo*, 600 F. App'x at 959. The Sixth Circuit concluded that an ALJ's consideration of a claimant's obesity was inadequate where the ALJ only observed the

claimant's weight, listed obesity as a severe impairment, and made the "bare statement" that "obesity has been considered in combination with the back condition." *Id.* at 962. The Sixth Circuit also faulted the ALJ for not considering the effect of a Level III BMI. *Id.* While Plaintiff's obesity is far less severe in this case than the claimant in *Shilo*, the ALJ failed to acknowledge obesity and the possible effects of the Level I BMI scores on Plaintiff's impairments.

Although the ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a Plaintiff's obesity as argued by the Commissioner, the Sixth Circuit explained the ALJ must do more than merely "mention the fact of obesity in passing." *Id*. at 959. Here, the ALJ did not even mention obesity in passing. The administrative hearing reflects only a brief mention of Plaintiff's weight, which was when Plaintiff noted weight gain as a side effect of medication. The Court concludes that Plaintiff is not requesting a particular mode of analysis; rather, Plaintiff is requesting that the ALJ engage in *any* analysis of Plaintiff's obesity and its potentially aggravating effect on Plaintiff's other impairments.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has the power to remand a case to the Commissioner if there is insufficient evidence on the record and additional fact-finding is required. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). Because the ALJ's decision is not supported by substantial evidence as a result of the ALJ's failure to even mention Plaintiff's obesity under the circumstances of this case, remand is necessary so that the Commissioner can provide clarity regarding the issues addressed herein.

Although Plaintiff raises other claims of error on appeal, her obesity-related claim of error is sufficient for the Court to conclude that the ALJ's decision is not supported by substantial evidence and, therefore, remand is proper. Proper consideration of Plaintiff's obesity

may impact other issues raised by Plaintiff—such as the weight given to her treating psychiatrist's opinion and the ALJ's evaluation of Plaintiff's subjective complaints and statements concerning the intensity, persistence, and limiting effects of her symptoms—upon remand because an ALJ's credibility analysis[2] is "inherently intertwined" with the RFC assessment. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at *10 n.7 (E.D. Tenn. May 18, 2016) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.")). Thus, the Court declines to address the other issues raised by Plaintiff, and the ALJ is free to address them on remand. The Court emphasizes, however, that no particular result is dictated on remand.

## V. CONCLUSION

For the foregoing reasons,

1) Plaintiff's motion for judgment on the administrative record [Doc. 17] is **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits;

2) The Commissioner's motion for summary judgment [Doc. 21] is **DENIED**; and

---

[2] SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016. SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment. Much of the existing case law refers to "credibility" evaluations, and the Court may refer to the ALJ's analysis using the same term.

3) The Commissioner's decision denying benefits is **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE